UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 5:16-CR-22-DCR-REW |
| v. | ) | |
| | ) | |
| DAVID BLACK DAUGHERTY and | ) | MEMORANDUM OPINION AND |
| ALFRED BRADLEY ADKINS, | ) | ORDER |
| | ) | |
| Defendants. | ) | |
| | ) | |

\*\*\* \*\*\* \*\*\*

Defendant David B. Daugherty, a former Social Security Administration (SSA) Administrative Law Judge (ALJ), faces an Indictment generally charging him with one count of conspiracy to commit mail fraud and wire fraud, two counts of mail fraud, two counts of wire fraud, and one count of conspiracy to money launder. *See* DE #1 (Indictment). The count recitation, though, hardly captures the depth and scope of the case, which targets an alleged 8 year Social Security fraud scheme involving thousands of claims, $5.7 million in proceeds, and $600 million in potential losses.

In the instant motion, Daugherty (joined by Defendant Adkins, *see* DE #133) moves to strike certain language from the Indictment. DE #130 (Motion). The United States responded in opposition. DE #150 (Response). The matter is ripe for consideration. For the following reasons, the Court **DENIES** DE #130.

*Legal Standard*

"Upon the defendant's motion, the court may strike surplusage from the indictment[.]" Fed. R. Crim. P. 7(d); *see also United States v. Kemper*, 503 F.2d 327, 329

1

(6th Cir. 1974) (noting that "the striking of surplusage [is] permissive but not mandatory"). "The Rule is properly invoked when an indictment contains nonessential allegations that could prejudicially impress the jurors." *Kemper*, 503 F.2d at 329. "The decision whether to strike language from an indictment rests within the sound discretion of the district court." *United States v. Emuegbunam*, 268 F.3d 377, 394 (6th Cir. 2001); *see also United States v. Moss*, 9 F.3d 543, 550 (6th Cir. 1993) (noting the Circuit reviews surplusage striking "only for an abuse of discretion"); *Kemper*, 503 F.2d at 330 (even an erroneous decision not to strike "is not ground for reversal" if it "did not affect the substantial rights of the defendant"). "A motion to strike surplusage should be granted *only* where it is clear that the language is irrelevant *and* prejudicial." *United States v. Neller*, 229 F.3d 1154, Nos. 97-3630, 97-3631, 97-4051, 97-4053, 99-3252, 2000 WL 1234330, at *2 (6th Cir. Aug. 25, 2000) (table) (*per curiam*) (emphases added). "[I]f the language in the indictment is information which the government hopes to properly prove at trial, it cannot be considered surplusage no matter how prejudicial it may be (provided, of course, it is legally relevant)." *United States v. Thomas*, 875 F.2d 559, 562 n.2 (6th Cir. 1989). Motions to strike surplusage are generally disfavored—the Rule 7(d) standard "has been strictly construed against striking surplusage[.]" *Kemper*, 503 F.2d at 329.

*Category 1—Language Concerning "On the Record" Decisions*

First, Daugherty moves to strike certain language from Indictment ¶¶ 13 and 14, generally concerning the regularity of SSA "on the record" (*i.e.*, hearing-less) decision-making. *See* DE #130, at 1-3. The United States opposes striking. DE #150, at 3-7.

Paragraph 13, which falls amid the Indictment's lengthy background section concerning the SSA disability determination process, states:

> *The vast majority of* ALJs typically held hearings to determine whether Claimants were disabled. In certain *limited* instances, ALJs could determine there was sufficient evidence in the records submitted by Claimants to support findings of disability without holding hearings. In such instances, the SSA permitted ALJs to issue 'on the record decisions' ('OTR decisions') awarding disability benefits.

DE #1, at ¶ 13 (emphases added to indicate the precise language Daugherty seeks to cut).

> Paragraph 14, for its part, says:

> Upon reviewing Claimants' applications and supporting documentation *and holding hearings*, ALJs then decided to either award or deny disability benefits. ALJs' decisions were communicated in writing to the Claimants. If ALJs awarded disability benefits, SSA offices then initiated the processes of disbursing disability benefits to Claimants.

*Id.* at ¶ 14 (emphasis added to indicate the phrase Daugherty wants stricken). The Indictment later charges that "**DAUGHERTY** solicited **CONN** to submit falsified medical evidence so that **DAUGHERTY** could issue fully favorable decisions, via OTR decisions[.]" DE #1, at ¶ 37(d); *see also id.* at ¶ 37(m).

Daugherty argues that both paragraphs "are inaccurate and misleading" because "[t]he ability to grant OTR decisions is not 'limited' nor is it ignored by the 'vast majority' of ALJs." DE #130, at 3. Daugherty asserts that the paragraphs "are prejudicial to" him because they imply that "OTR decisions are unusual and/or limited" and "cast the idea of OTR decision-making, and [his] use of the OTR process, in a negative light." *Id.* The Government responds that it "intends to introduce evidence at trial precisely to the effect that the relevant On-The-Record ('OTR') decisions were atypical and were used by [Daugherty] to help execute the fraudulent scheme." DE #150, at 3.

The Court, in the circumstances and in an exercise of its discretion, denies Daugherty's request to strike the above-italicized phrases. No party doubts that the phrases pass over the low relevancy threshold, given the case charges and context. Under

*Thomas* (and as repeated throughout Sixth Circuit case law), if the Government "hopes to properly prove" a relevant piece of information "at trial, it cannot be considered surplusage[.]" 875 F.2d at 562 n.2. That is the case here—the United States asserts that it "intends to introduce evidence at trial precisely to the effect that the relevant" OTR decisions "were atypical[.]" DE #150, at 3. Proving atypicality may indeed require the Government to establish the typical ALJ practice, the frequency with which ALJs convened hearings, and the like. Per *Thomas*, this ends the matter—because the Government "hopes to prove" the information, "it cannot be considered surplusage[.]"[1]

Additionally, as the Government argues, the Court should not strike the phrases—included in the Indictment's background section—because they indeed help "explain[] the context and circumstances surrounding [the] charged fraud in order for the charges to be understood." *United States v. Garton*, No. 3:08-CR-31-JMH, 2009 WL 1424429, at *3 (E.D. Ky. May 21, 2009) (citing cases); *see also, e.g.*, *United States v. Jimenez*, 824 F. Supp. 351, 370 (S.D.N.Y. 1993). To the extent Daugherty contests the accuracy of the ¶¶ 13-14 matters, "the truth of the Indictment's allegations are to be tested at trial, not through pretrial motion, *see United States v. Knox*, 396 U.S. 77, 83, 90 S. Ct. 363, 24 L. Ed. 2d 275 (1969), and any unfair prejudice that remains can be eliminated through a simple instruction to the jury that the indictment is not evidence." *Garton*, 2009 WL 1424429, at *3; *see also, e.g.*, *United States v. Johnson*, 585 F. Supp. 80, 81 (M.D. Tenn. 1984). As this District summarized:

---

[1] The Court does not perceive ¶ 14 itself as stating or implying, in any way, that OTR decisions are negative or that hearings are necessary (or "mandatory prerequisite[s,]" *see* DE #130, at 2), especially in light of the immediately preceding paragraph explicitly contemplating OTR (hearing-less) decisions. The Court subsumes ¶ 14 within the holding but notes this additional basis for denying striking.

> The United States must present evidence at trial which would support such facts if [it] wish[es] to submit them to the jury, and Defendant Garton and his co-defendants will have an opportunity at their respective trials to cross-examine the witnesses of the United States if they wish to argue and establish that the 'Background' allegations are inaccurate. The Court will not prematurely strike this information at this time.

*Garton*, 2009 WL 1424429, at *3. Daugherty will certainly have a similar chance to present the DE #130 proof and argument, if needed, to challenge any contrary Governmental assertion(s) at trial.

The ¶¶ 13-14 discussion seems to refer, in context, to the Huntington Hearing Office practices at the time. It is not clear, at this stage, whether the Government intends its typicality argument to pertain only to the historical (*i.e.*, temporally related) customs in that office. The OTR authority is a matter of regulation, which the Court can address through an appropriate instruction, if needed. Given that the Government intends to prove just what it alleged in the paragraphs, the Court will not strike the matters; trial machinations will iron out any proof disputes on the verbiage.

To summarize: *Thomas* foundationally mandates motion denial. Next, even if *Thomas* did not so require, the Court perceives no cognizable prejudice per the discussion, *e.g.*, in *Garton*. Further, applying *Neller*'s conjunctive test, even if Daugherty did face unfair prejudice, the ¶¶ 13-14 language is not irrelevant, independently requiring denial. *See* 229 F.3d 1154, 2000 WL 1234330, at *2 ("[A] prejudice determination [*i.e.*, probative balancing] is no part of the Fed. R. Crim. P. 7 analysis."); *see also, e.g.*, *United States v. Ledbetter*, Nos. 2:15-CR-80, 2:14-CR-127, 2015 WL 5029249, at *2 (S.D. Ohio Aug. 26, 2015) ("[R]elevant information may not be legitimately stricken from an indictment, regardless of its prejudicial impact[.]"); *United States v. Hazelwood*, No. 1:10 CR 150, 2011 WL 2565294, at *23 (N.D. Ohio June 27, 2011) ("The fact that language

5

may be prejudicial to the defendant is not sufficient to warrant the striking of language in the Indictment. It must also be irrelevant."). Accordingly, the Court finds no basis to strike under the applicable standard and thus denies Daugherty's effort to strike the ¶¶ 13-14 phrases.

*Category 2—Language Concerning the Scope of the Alleged Fraud*

Daugherty next moves to strike certain language from Indictment ¶¶ 37(j) and 37(s), generally concerning the numerical scope of the alleged fraud. DE #130, at 3-5. The Government opposes. DE #150, at 7-11.

The lengthy paragraph 37 describes the manner and means of the alleged conspiracy. Subparagraph (j) specifically provides:

> **CONN** submitted, and caused others to submit, through interstate wire transmissions, the medical evaluation reports, pre-completed RFCs, summary reports, and the radiology reports to **DAUGHERTY**, and other Huntington Hearing Office ALJs, in support of disability determinations, *and did so in more than 2,000 cases* pending before the Huntington Hearing Office.

DE #1, at ¶ 37(j) (emphasis added indicating the phrase Daugherty requests the Court to strike).

> Subparagraph 37(s) alleges:

> Based on these false and fraudulent submissions made to the SSA, **CONN**, **DAUGHERTY**, **ADKINS**, Unindicted Co-Conspirator A, Unindicted Co-Conspirator B, and Unindicted Co-Conspirator C intended that the SSA disburse retroactive and proactive disability benefits, *an amount to exceed $600,000,000*, to Claimants, residing in Fleming, Floyd, Lawrence and Madison Counties, in the Eastern District of Kentucky, and elsewhere, irrespective of the Claimants' actual entitlement to benefits.

*Id.* at ¶ 37(s) (emphasis adding indicating Daugherty's strike request). Daugherty's theory is that the above-italicized phrases are "[u]nnecessary and irrelevant" and is, at least in

6

part, premised on a favorable outcome of the motion for a bill of particulars. DE #130, at 4.

The Court, exercising its discretion, similarly denies Daugherty's request to strike the ¶¶ 37(j) and (s) phrases. As above, the Government tells the Court that it "intends to prove at trial" the allegations, which ends the matter. *Thomas*, 875 F.2d at 562 n.2. Further, applying *Neller*, the ¶¶ 37(j) and (s) phrases obviously are not irrelevant—they are basic measures of the alleged conspiracy's actual scope—which independently mandates motion denial. *See* 229 F.3d 1154, 2000 WL 1234330, at *2; *see also, e.g.*, *Hazelwood*, 2011 WL 2565294, at *23 (declining to strike references to "hundreds of thousands of prescription pills" and "thousands of prescriptions that they knew were illegal" even though "the Indictment only allege[d] 22 instances where controlled substances were dispensed and distributed" because the Government "indicated that it is charging Hazelwood with distributing more controlled substances than the controlled buys contained within the Indictment" and the scope statements "accurately reflect[ed] information regarding charges the Government intends to prove at trial"); *United States v. Rodriguez*, 50 F. Supp. 2d 717, 720 (N.D. Ohio 1999) (noting the court's prior declination to strike an allegation that Defendant "abducted and murdered" a person because it was "relevant to show not only the existence of the alleged conspiracy, but the depth and breadth thereof"); *United States v. Miller*, 815 F.2d 80, No. 86-1427, 1987 WL 36302, at *3 (6th Cir. Feb. 5, 1987) (table) (favorably including the following citation: "*United States v. Krasnoff*, 480 F. Supp. 723, 730 (S.D.N.Y. 1979) (court refused to strike as overly prejudicial the allegation that a doctor had prescribed 'massive amounts'

of prescriptions for controlled substances)").[2] In this conspiracy case, details regarding alleged scope clearly are not surplusage.

These principles apply equally regarding total alleged loss amounts. *See, e.g.*, *United States v. Beasley*, No. 12-20030, 2014 WL 4402078, at *2 (E.D. Mich. May 7, 2014) (declining to strike a reference to "losses of at least $84.18 million from investments associated with the scheme to defraud" because the total loss was relevant to the Government's theory of the case); *United States v. Hampton*, No. 4:06cr0097 SWW, 2006 WL 3210003, at *2 (E.D. Ark. Nov. 6, 2006) (declining to strike a reference to "a tax loss of more than $150,000" because it was "not unduly prejudicial and . . . [wa]s relevant in that it states the scope of the crimes charged"); *United States v. Gotti*, No. S802CR743(RCC), 2004 WL 2389755, at *5 (S.D.N.Y. Oct. 26, 2004) (declining to strike an allegation that the "conspiracy involved a loss of more than $5,000,000" because "[e]vidence that $5,000,000 was obtained [wa]s . . . relevant to an element of extortion" and rejecting an argument that "the Government seek[ing] to quantify the amount instead of proving merely that some unspecified property was obtained" rendered "the evidence irrelevant or overly prejudicial").

Accordingly, the Court finds no basis to strike under the applicable Rule 7(d) standard and thus denies Daugherty's effort to strike the ¶¶ 37(j) and (s) phrases.[3]

---

[2] The Court's conclusion thus in no way depends on the outcome of the motions for bills of particulars, which the Court will address by separate Order. Even if the Court ordered production of bills of particulars, that decision would not be an *in limine* ruling regulating proof presentation at trial, and the Indictment's conspiracy scope allegations foundationally remain relevant to the charges.

[3] The Court reiterates the *Garton* discussion excerpted above concerning the relationship between the actual trial proof and the matters submitted to the jury, and referencing the opportunity to cure any possibility of unfair prejudice "through a simple instruction to the jury that the indictment is not evidence." *See* 2009 WL 1424429, at *3.

*Conclusion*

For these reasons, the Court wholly **DENIES** DE #130.

\* \* \* \* \*

The Court issues this Order resolving a non-dispositive pretrial matter[4] under 28 U.S.C. § 636(b)(1)(A). Any party objecting to this Order should consult the statute and Federal Rule of Criminal Procedure 59(a) concerning its right of and the mechanics for reconsideration before the District Court. Failure to object waives a party's right to review.

This 28th day of February, 2017.

Signed By:

*Robert E. Wier*

United States Magistrate Judge

---

[4] *See, e.g.*, *United States v. Sikma*, No. 2:05-CR-40, 2006 WL 47666, at \*1-\*2 (N.D. Ind. Jan. 9, 2006) (labeling a motion to strike surplusage nondispositive); *United States v. Mickle*, No. CRIM. 04-239(1)ADMAJB, 2004 WL 2302865, at \*1, \*3 (D. Minn. Oct. 12, 2004) (treating a motion to strike surplusage as a nondispositive matter that a Magistrate Judge denied via Order).