UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>  )<br>  Plaintiff,  )<br>  )<br>v.  )<br>  )<br>DAVID BLACK DAUGHERTY and  )<br>ALFRED BRADLEY ADKINS,  )<br>  )<br>  Defendants.  )<br>  ) | No. 5:16-CR-22-DCR-REW<br><br>RECOMMENDED DISPOSITION |

\*\*\* \*\*\* \*\*\*

Defendants David Black Daugherty, a former Social Security Administration (SSA) Administrative Law Judge (ALJ), and Alfred Bradley Adkins, a clinical psychologist, face an Indictment charging each with numerous counts, centering on an alleged 8-year Social Security fraud scheme involving thousands of claims and $600 million in alleged losses. *See* DE #1 (Indictment).

Each Defendant separately moved to dismiss the Indictment due to allegedly prejudicial preindictment delay. DE ##132, 143 (Motions).[1] The United States responded. DE ##148, 149 (Responses). The matters are ripe for consideration. For the following reasons, the Court **RECOMMENDS** that the District Court **DENY** DE ##132 (to the extent it raises a preindictment delay theory) and 143.

*Legal Standard*

"[S]tatutes of limitations," the Supreme Court has long cautioned, "provide the primary guarantee[] against bringing overly stale criminal charges." *United States v.*

---

[1] DE #132 also contains a separate, immunity-based dismissal theory, which the Court will address by separate recommendation.

1

*Lovasco*, 97 S. Ct. 2044, 2048 (1977) (internal quotation marks omitted).[2] However, "the Due Process Clause has a limited role to play in protecting against oppressive delay." *Id.* The Sixth Circuit

> has consistently read *Lovasco* to hold that "[d]ismissal for pre-indictment delay is warranted **only when the defendant shows** [1] substantial prejudice to his right to a fair trial and [2] that the delay was an intentional device by the government to gain a tactical advantage." *United States v. Brown*, 667 F.2d 566, 568 (6th Cir. 1982) (per curiam) (emphasis added); *accord United States v. Lawson*, 780 F.2d 535, 541 (6th Cir. 1985) (per curiam). "A showing of prejudice to the defendant, without more, is not enough to prove a due process violation; rather, there must also be a consideration of the reasons for the delay." [*United States v.*] *Atisha*, 804 F.2d [920,] 928 [(6th Cir. 1986)]; *accord United States v. DeClue*, 899 F.2d 1465, 1468-69 (6th Cir. 1990). Thus, although preindictment delay intentionally brought about by the prosecution to obtain a tactical advantage over the defendant may warrant the dismissal of an indictment, *see, e.g.*, *Atisha*, 804 F.2d at 928; *Lawson*, 780 F.2d at 541, a defendant's Fifth Amendment due process rights are generally not implicated where the government offers a valid reason for the delay, *DeClue*, 899 F.2d at 1469.

*United States v. Brown*, 959 F.2d 63, 66 (6th Cir. 1992) (boldface added); *see also* Fed. R. Crim. P. 48(b); *United States v. Rogers*, 118 F.3d 466, 475-76 (6th Cir. 1997) (requiring a defensive showing of "actual substantial prejudice"). "**The standard for pre-indictment delay is nearly insurmountable**, especially because proof of actual prejudice is always speculative." *Rogers*, 118 F.3d at 477 n.10 (emphasis added).

"The death of a potential witness during the pre-indictment period may demonstrate the requisite prejudice if the defendant can demonstrate that exculpatory evidence was lost and could not be obtained through other means. However, a defendant does not show actual prejudice based on the death of a potential witness if he has not given an indication of what the witness's testimony would have been and whether the

---

[2] Neither Defendant contends the Indictment transgressed the applicable statute of limitations. *See, e.g.*, DE #132-1, at 6 (conceding "the charges may be within the Statute of Limitations").

2

substance of the testimony was otherwise available. Even where a defendant specifies what a deceased witness's testimony would have been, actual prejudice is difficult to prove." *Rogers*, 118 F.3d at 475 (paragraph break removed) (agreeing "that Rogers did not show actual substantial prejudice").

*Analysis—Daugherty's Motion*

On this record, Daugherty satisfies neither *Brown* prong:[3]

*First*—Daugherty has not shown "substantial prejudice to his right to a fair trial," *Brown*, 959 F.2d at 66, or, as also phrased, "actual substantial prejudice." *Rogers*, 118 F.3d at 476. Daugherty bases the prejudice theory on "at least four potential defense witnesses [who have] died or become incapacitated after the Social Security Administration was notified of the allegations." DE #143, at 2. Again, in the context of potential witness death or incapacitation, Defendant must (1) show "that exculpatory evidence was lost and could not be obtained through other means"; and (2) "give[] an indication of what the witness's testimony would have been and whether the substance of the testimony was otherwise available." *Rogers*, 118 F.3d at 475. The Court considers each witness Daugherty lists.

    1.    Algernon Tinsley. Former SSA ALJ Tinsley, according to Daugherty, died in 2014. *Id.* "Before his death," per Daugherty, "he gave an interview to investigating agents" and denied "knowledge of any improper relationship between" Daugherty and Conn. *Id.* Tinsley also allegedly generally criticized certain SSA internal priorities and practices. *Id.* at 3.

---

[3] The delay period targeted is roughly (but less than) 5 years—from April or May 2011 to April 1, 2016, the date of Indictment. *See* DE #143, at 2.

3

Daugherty fails to meet the *Rogers* burden as to Tinsley. The United States asserts that "there are dozens of current and former SSA employees . . . who [at least theoretically] could testify on precisely the same topics." DE #148, at 10. The Court perceives that as surely accurate—a witness such as Tinsley (merely a co-worker of Daugherty's and a fellow adjudicator of cases Conn brought) simply denying knowledge of an improper relationship between Daugherty and Conn assuredly would be commonplace, especially if Defendant in fact had no improper relationship with Conn, and given the alleged length of time the purported conspiracy went undetected. Such attrition from a pool of witnesses does not implicate due process. Daugherty, thus, on this record, has not proven that "the substance of [Tinsley's] testimony was otherwise [un]available" and "could not be obtained through other means." *Rogers*, 118 F.3d at 475.

Additionally, here, "the deceased's role was 'too peripheral [to the events] to view his absence as substantially prejudicial' because he did not directly participate in the transaction in question." *Id.* (quoting *United States v. Valona*, 834 F.2d 1334, 1338-39 (7th Cir. 1987)). The Court sees no contention that Tinsley was involved in alleged impropriety or that he was a direct participant in any Daugherty—Conn interactions. Given the likely availability of similar testimony from other individuals (and certainly Daugherty's failure to affirmatively prove, as is his duty, that such testimony is *not* available) and Tinsley's apparent disconnect from the events at issue in the case, Daugherty has not shown actual substantial prejudice regarding Judge Tinsley.

      2.     Frederic Huffnagle. Defendant says that Dr. Huffnagle "died in late 2010." DE #143, at 3. This is *before* the delay period about which Defendant

complains, meaning that clearly any delay in bringing the Indictment had no logical impact on Huffnagle's availability for trial.

Evaluating Huffnagle under the standard rubric, Daugherty claims that the Government views "some of Dr. Huffnagle's work as false and fraudulent." *Id.* Defendant avers that investigators interviewed Huffnagle's wife, "who at times worked closely with" Dr. Huffnagle and "believes that [he] completed his own reports and forms based on his personal examination of the claimants." *Id.* Mrs. Huffnagle purportedly believes that Dr. Huffnagle had "very limited" contact with Conn and "hardly any" contact with Conn's staff, possibly indicating that Dr. Huffnagle did not allow Conn to prepare reports and did not pre-sign forms. *Id.*

Clearly, as to Huffnagle, Daugherty neither shows "that exculpatory evidence was lost and could not be obtained through other means" nor "give[s] an indication of what the witness's testimony would have been and whether the substance of the testimony was otherwise available." *Rogers*, 118 F.3d at 475. Daugherty does not describe "what [*Huffnagle's*] testimony" would have been at all, instead simply recounting what *Mrs. Huffnagle* allegedly told investigators. DE #143, at 3 ("Mrs. Huffnagle . . . believes"; "She further believes"; "She believes"). Daugherty also fails the "otherwise available" / "obtained through other means" requirement; the motion does not suggest that Mrs. Huffnagle has died or become incapacitated, and, as the Government argues, "Defendant is free to [seek to] call Dr. Huffnagle's wife at trial to testify." *See* DE #148, at 9. Daugherty proves no actual substantial prejudice as to Dr. Huffnagle.

        3.    William Redd. Daugherty says that investigators interviewed Redd, "a 'high volume' claimants' lawyer who practiced before" Daugherty (in his role

5

as ALJ), in 2011. DE #143, at 3-4. Redd allegedly said that his and his wife's campaign contributions to Daugherty's daughter "were based only on the fact that they had known [her] . . . since she was a child" and approved of her candidacy. *Id.* at 4. This, per Daugherty, would counter a Governmental allegation that Defendant "pressured attorneys practicing before him . . . to make campaign contributions to his daughter." *Id.* Daugherty claims Redd "had a stroke" at some undisclosed time, preventing a defensive interview. *Id.*

Daugherty, again (even assuming the detailless stroke occurred during the delay period), wholly fails to satisfy *Rogers*. He does not show "that exculpatory evidence was lost and could not be obtained through other means" or "give[] an indication of what the witness's testimony would have been and whether the substance of the testimony was otherwise available." 118 F.3d at 475. Daugherty does not explain how Redd's testimony regarding his motives for donating to Defendant's daughter's campaign are "exculpatory" to the charges Defendant faces, which facially address wholly unrelated matters. There is no prejudice where, as here, Daugherty gives "no indication of how the witness would have aided the defense[.]" *United States v. Duncan*, 763 F.2d 220, 222 (6th Cir. 1985).

Further, Daugherty fails the "otherwise available" / "obtained through other means" prong because he indicates Redd's wife had the same motivations and could testify to the same matters. Daugherty does not suggest that Redd's wife is dead or incapacitated. Additionally, like Tinsley, Redd's role is simply "too peripheral to view his absence as substantially prejudicial because he did not directly participate in the transaction in question." *Rogers*, 118 F.3d at 475 (internal quotation marks removed). The Court sees no suggestion that Redd is implicated in any impropriety or was directly

involved in any interaction involving Daugherty, Conn, and Adkins. The doubts about proof utility further erode Daugherty's showing.

        4.      Syed Ikramuddin. Dr. Ikramuddin, "a physician who provided reviews of claimants at the request of Mr. Conn," according to Daugherty, "died in late 2011." DE #143, at 4. Defendant admits that "[i]t is unclear what [Ikramuddin] would have said about the propriety of his reviews of claimants," but nevertheless asserts that "several physicians involved in this case have defended their work on behalf of Mr. Conn as accurate and truthful." *Id.*

Clearly, given Daugherty's concession that "[i]t is unclear what [Ikramuddin] would have said about the propriety of his reviews of claimants," Defendant does not meet the *Rogers* standard. He utterly fails to show "that exculpatory evidence was lost and could not be obtained through other means" or to "give[] an indication of what the witness's testimony would have been and whether the substance of the testimony was otherwise available." *Rogers*, 118 F.3d at 475. Despite Daugherty's complete failure to identify lost exculpatory evidence or the substance of Ikramuddin's potential testimony, Daugherty also suggests there are "several physicians involved" who could "defend[] their work . . . as accurate and truthful," indicating that "the substance of the testimony [i]s otherwise available." Daugherty clearly has shown no actual substantial prejudice regarding Ikramuddin.

In sum, as to each witness identified, Daugherty has shown no "substantial prejudice to his right to a fair trial," *Brown*, 959 F.2d at 66, or "actual substantial

7

evidence." *Rogers*, 118 F.3d at 476.[4] The District Court should deny DE #143 on this basis.

*Second*—Regardless of the result on the prejudice prong, Daugherty certainly has not shown "that the delay was an intentional device by the government to gain a tactical advantage." *Brown*, 959 F.2d at 66. Indeed, he does not even attempt such a showing. *See* DE #143, at 4-5. Instead, Daugherty merely cites to a 23-year-old Seventh Circuit case and asks the Court to apply the out-of-circuit analysis, which flips 180º the Sixth Circuit's assigned burden of proof. *Id.* (citing *United States v. Sowa*, 34 F.3d 447, 451 (7th Cir. 1994)).

The Court declines the invitation. *See, e.g.*, *United States v. Greer*, 956 F. Supp. 525, 528 (D. Vt. 1997) (properly "follow[ing] Second Circuit authority, which clearly places the burden on defendants to show both actual prejudice and improper purpose for delay," despite *Sowa*); *Story v. Martel*, No. 10-CV-566-LHK, 2011 WL 90112, at *6 n.2 (N.D. Cal. Jan. 10, 2011) (characterizing *Sowa* as "depart[ing] from the other circuits by employing a burden-shifting test").[5] Supreme Court and Sixth Circuit precedent, not

---

[4] Daugherty further seeks to incorporate the 16 individuals identified by initials in Adkins's motion. DE #143, at 4. The Court rejects a preindictment delay dismissal claim as to those individuals, as explained below, and incorporates that discussion as to Daugherty. Daugherty lists no specific reason he believes the death of any of the individuals (who allegedly were claimants involved merely with Conn and Adkins) caused *him* prejudice. To the extent Daugherty purports to "incorporate[] by reference" Conn's preindictment delay motion (DE #134), *see* DE #143, at 1, Conn's withdrawn motion added nothing of substance to Adkins's, *see* DE #134, at 2-3 (basing argument solely on the 16 people identified by Adkins), necessitating no additional analysis.

[5] *Sowa* is indeed an outlier in shifting the prong two burden to the United States. *See, e.g.*, *United States v. Gulley*, 526 F.3d 809, 820 (5th Cir. 2008) (assigning burden to defendant); *United States v. Hayes*, 40 F.3d 362, 365 (11th Cir. 1994) (same); *United States v. Stierwalt*, 16 F.3d 282, 285 (8th Cir. 1994) (same); *United States v. Engstrom*, 965 F.2d 836, 839 (10th Cir. 1992) (same); *United States v. Scarpa*, 913 F.2d 993, 1014 (2d Cir. 1990) (same); *United States v. Ismaili*, 828 F.2d 153, 167-68 (3d Cir. 1987) (same); *United States v. Marler*, 756 F.2d 206, 214-15 (1st Cir. 1985) (same).

*Sowa*, is the "controlling authority" for this Court. *United States v. Yoon*, 398 F.3d 802, 806 (6th Cir. 2005); *Darrah v. City of Oak Park*, 255 F.3d 301, 309-10 (6th Cir. 2001).

Under clear and long-established Sixth Circuit law (in line with nearly every other Circuit), Daugherty had an affirmative duty to show "that the delay was an intentional device by the government to gain a tactical advantage." *Brown*, 959 F.2d at 66; *Rogers*, 118 F.3d at 476-77 ("[I]t is firmly established that the defendant must show that the government purposely delayed in order to gain a tactical advantage over the defendant." (internal quotation marks removed)); *United States v. Schaffer*, 586 F.3d 414, 424-26 (6th Cir. 2009) ("In this circuit, dismissal for pre-indictment delay is warranted only when the defendant shows substantial prejudice to his right to a fair trial and that the delay was an intentional device by the government to gain a tactical advantage. . . . [T]he applicable standard . . . requires [Defendant] to demonstrate that the Government had no valid reason for the delay." (internal quotation mark removed)). Defendant did not make—or even attempt—such a showing here, an independent and fully adequate reason to deny the motion to dismiss for preindictment delay. *Rogers*, 118 F.3d at 477.

*Analysis—Adkins's Motion*

Adkins similarly satisfies neither *Brown* prong:

*First*—Adkins has not shown "substantial prejudice to his right to a fair trial," *Brown*, 959 F.2d at 66, or "actual substantial prejudice." *Rogers*, 118 F.3d at 476. Adkins's prejudice theory rests on the deaths of 16 individuals, "Social Security claimants referred to [Adkins] by [Conn] for mental health evaluations." DE #132-1, at 6. Adkins identifies the 16 claimants by initials. *See id.*

9

Adkins says "these Claimants [would] have been able to testify as to the thoroughness of [his] mental health evaluation of them" and that the jury would have been able to "personally view" them. *Id.* "Moreover," Adkins asserts, he "has lost the opportunity to request complete mental evaluations to be performed by other professionals to show his assessments were true and accurate[.]" *Id.*

The argument first fails on the *Rogers* "otherwise available" / "obtained through other means" prejudice prong. 118 F.3d at 475. As the United States argues, Adkins "evaluated hundreds of claimants for Conn during the course and scope of the charged conspiracy, meaning there are hundreds of potential witnesses for Defendant to call during trial in his defense." DE #149, at 14-15; *see also* DE #132, at 2 (Adkins conceding that only "some claimants have . . . passed away"). Accordingly, "the substance of the testimony" from these 16 people "[i]s otherwise available" via the hundreds of other exemplar claimants allegedly involved with both Conn and Adkins, meaning Adkins has established no actual substantial prejudice. *Rogers*, 118 F.3d at 475-76.

Adkins similarly fails to prove that these 16 individuals would have actually provided "exculpatory evidence" at trial. Adkins offers utterly no proof or basis for a belief that these claimants would have testified "to the thoroughness" of Adkins's evaluations; it is similarly a possibility, on this sparse and speculative record, that the sixteen would have testified to the *cursoriness* of Adkins's evaluations. *United States v. Marion*, 92 S. Ct. 455, 466 (1971) (rejecting finding actual prejudice when the defense's "due process claims are speculative"); *Duncan*, 763 F.2d at 222 (no prejudice when "there was no indication of how the witness would have aided the defense" (internal alteration removed)); *Rogers*, 118 F.3d at 477 n.10 (discounting "speculative" proof of

10

actual prejudice); *United States v. Moore*, 515 F. Supp. 509, 510 (S.D. Ohio 1981) ("[T]he requisite prejudice resulting from the delay must be shown to be actual, specific, particularized, and nonspeculative.").[6] The District Court should deny Adkins's motion to dismiss on the prejudice basis alone.

*Second*—Again, regardless of the posture on the prejudice prong, Adkins certainly has not shown "that the delay was an intentional device by the government to gain a tactical advantage." *Brown*, 959 F.2d at 66. Attempting to make the showing, Adkins claims that the Government "knew of or knows the actual physical/mental condition of these claimants" (including that they were "gravely ill") but "waited until their deaths to institute a prosecution against" him. DE #132-1, at 7.

Adkins's naked assertions, with no evidentiary support, clearly do not prove that the Government delayed the Indictment here "intentional[ly] . . . to gain a tactical advantage." Adkins offers nothing to show that the prosecutors (1) knew any of the listed individuals (much less any of their physical or mental conditions), or (2) divined any of their anticipated dates of death, so as to manipulate the charging process to account for witness mortality.[7] In essence, Adkins, with "no direct evidence of bad faith," would have the Court "infer an improper prosecutorial motive merely from the fact that the filing of the federal indictment followed" these claimants' deaths, an "untenable" proposition. *Brown*, 959 F.2d at 66; *see also Schaffer*, 586 F.3d at 426 ("The applicable standard . . . neither imputes nor presumes an improper purpose where the defendant

---

[6] Adkins also never explains how the jury "personally view[ing]" any of the sixteen would provide insight into his or her "*mental* histories." DE #132-1, at 6 (italics added).
[7] In any event, R.C., P.H., and P.W. purportedly died *before* the delay period began, meaning that any Indictment delay had no impact on their availability for trial. Numerous others died during the core period of the Southern District of West Virginia investigation.

11

simply cannot fathom a valid reason for the delay."). Adkins here tenders no proof showing an ill Governmental intent.

Further, the United States denies Adkins's unsupported allegations, *see* DE #149, at 12 (characterizing the defensive argument as "nothing short of absurd"), and the Court "accept[s] such representations from counsel in this context." *Rogers*, 118 F.3d at 476. Indeed, just as in *Rogers*, "the government asserts that the development of a thorough and fair investigation and the complexity of the case caused the delay in obtaining the indictment," *id.*, not improper motive. DE #149, at 12 ("[U]p to returning the Indictment . . . [and] during the period of delay, the United States continued to interview potential witnesses, subpoena and review financial records, identify relevant claimant file folders, review relevant SSA claims data, and ultimately amass evidence to satisfy itself that it could prove its case beyond a reasonable doubt."); *see also Lovasco*, 97 S. Ct. at 2051-52. Adkins has not proven, on this record, that the United States, which assessed a mammoth case over time by and involving two prosecuting units, "had no valid reason for the delay[.]" *DeClue*, 899 F.2d at 1468-69. Quite simply, "a defendant's Fifth Amendment due process rights are generally not implicated where," as here, "the government offers a valid reason for the delay[.]" *Brown*, 959 F.2d at 66; *see also Lovasco*, 97 S. Ct. at 2051-52 ("We therefore hold that to prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time."). Adkins's prong two failure is an independent reason to deny the motion to dismiss for preindictment delay.

*Conclusion*

For these reasons, the Court **RECOMMENDS** that the District Court **DENY** DE ##132 (to the extent it raises a preindictment delay theory) and 143.

\* \* \* \* \*

The Court issues this recommendation under 28 U.S.C. § 636(b)(1)(B). The parties should consult 28 U.S.C. § 636(b)(1) and Federal Rule of Criminal Procedure 59(b) for specific appeal rights and mechanics. The objection period will be as stated in the Rule and statute, subject to any particular modifying schedule, if set by Judge Reeves. Failure to object in accordance with the Rule waives a party's right to review.

This the 24th day of March, 2017.

Signed By:
Robert E. Wier  *REW*
United States Magistrate Judge