UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 5: 16-022-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| DAVID BLACK DAUGHERTY and | ) | **MEMORANDUM OPINION** |
| ALFRED BRADLEY ADKINS, | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant David Black Daugherty, a former Administrative Law Judge ("ALJ") with the Social Security Administration ("SSA"), and clinical psychologist Alfred Bradley Adkins were subjects of a Federal Grand Jury Indictment returned on April 1, 2016. [Record No. 1] The defendants were charged with numerous counts related to a conspiracy spanning more than seven years. Along with Eric Conn, Daugherty and Adkins are alleged to have unlawfully deprived the Social Security Administration of an amount in excess of $600,000,000.

Daugherty and Adkins each moved to dismiss the charges against them. Daugherty moved to dismiss the Indictment on the basis of pre-indictment delay. [Record No. 143] Adkins moved to dismiss the indictment on the basis of pre-indictment delay, immunity, and for failure to state an offense. [Record Nos. 132 and 139] The United States filed responses in opposition to the motions. [Record Nos. 148, 149, 155] The motions were referred to United States Magistrate Judge Robert E. Wier for review and issuance of a report pursuant to 28 U.S.C. § 636(b)(1)(B). In three separate Recommended Dispositions, Magistrate Judge

-1-

Wier analyzed each claim and recommended that they be denied. [Record Nos. 177, 178, 181] Following review, the Court agrees with the recommendations.

## I. Pre-Indictment Delay

Defendant Daugherty alleges that the Social Security Administration Office of the Inspector General ("OIG") opened the case that led to his Indictment on May 16, 2011. [Record No. 143 at 2] Defendant Adkins references a Grand Jury proceeding in the Southern District of West Virginia in September of 2012 as the beginning of the alleged delay in bringing this case. [Record No. 132-1 at 2, 6]

As explained in the Magistrate Judge's Recommended Disposition, obtaining dismissal for pre-indictment delay presents a defendant with a burden that is "nearly insurmountable." *United States v. Rogers*, 118 F.3d 466, 477 n.10 (6th Cir 1997). Dismissal under this theory "is warranted only when the defendant shows [1] substantial prejudice to his right to a fair trial *and* [2] that the delay was an intentional device by the government to gain a tactical advantage." *United States v. Brown*, 959 F.2d 63, 66 (6th Cir. 1992) (emphasis in original). The defendants have established neither ground.

As to the first prong of prejudice, Daugherty and Adkins base their arguments on the death of *potential* witnesses. The Sixth Circuit recognized in *Rogers* that "[t]he death of a potential witness during the pre-indictment period may demonstrate the requisite prejudice *if* the defendant can demonstrate that exculpatory evidence was lost and could not be obtained through other means." 118 F.3d at 475 (emphasis added). "However, a defendant does not show actual prejudice based on the death of a potential witness if he has not given an indication of what the witness's testimony would have been and whether the substance of the testimony

was otherwise available." *Id.* Moreover, "[e]ven where a defendant specifies what a deceased witness's testimony would have been, actual prejudice is difficult to prove." *Id.*

Daugherty's Motion identifies four deceased individuals who potentially could have been called as witnessed during trial. However, he fails to show a loss of exculpatory evidence "not [] obtain[able] through other means," as *Rogers* requires. As one example, Daugherty identifies former SSA ALJ Algernon "Al" Tinsley, who died in 2014. [Record No. 143 at 2] According to the defendant, Tinsley gave an interview before his death stating that he had worked with Daugherty and Conn and "had no knowledge of any improper relationship between the two." [*Id.*] Tinsley allegedly stated he would never have worked for Conn had he thought Conn was doing anything illegal. [*Id.*] Further, Tinsley criticized the SSA as "only concerned about the quantity of the work produced by their ALJs, not the quality of that work." [*Id.* at 3] This is plainly insufficient to meet the prejudice standard.

It is far from clear how Tinsley's potential testimony is unique. As the government argues and the Magistrate Judge points out, "simply denying knowledge of an improper relationship between Daugherty and Conn assuredly would be commonplace, especially if [Daugherty] in fact had no improper relationship with Conn[.]" [Record No. 177 at 4] Moreover, there are surely numerous other individuals who could testify regarding the SSA's policies and its treatment of ALJs. Without any showing that Tinsley's testimony is not available through other means, Daugherty has made it nowhere near the mark of showing actual prejudice from the death of Tinsley and loss of his testimony.

This is also true for the other potential witnesses Daugherty identifies. Dr. Frederick Huffnagle, according to Daugherty, died in late 2010, *before* the delay period about which the defendants complain. Because Daugherty does not allege that the prosecutorial delay preceded

2011, it is not clear how Dr. Huffnagle could have been a potential witness.[1] Attorney William Redd, a lawyer who practiced before Daugherty and has since had a stroke (the time of which is undisclosed), could have supposedly testified regarding campaign contributions to Daugherty's daughter—a tangential issue and not something alleged to be unique to Redd's knowledge. Finally, Dr. Syed Ikramuddin, a physician who provided reviews of claimants at the request of Conn, died in late 2011. Daugherty admits that "it is unclear what this physician would have said about the propriety of his reviews of claimants[.]" [Record No. 143 at 4] Apart from failing to give any "indication of what the witness's testimony would have been" for Dr. Ikramuddin, Daugherty fails to discuss for each of these individuals "whether the substance of [their] testimony [is] otherwise available." For reasons distinct or shared among the now-deceased potential witlessness, Daugherty has failed to meet the *Rogers* test for establishing prejudice.

Defendant Adkins lists the initials of 16 now-deceased claimants whom he alleges would have been able to "testify as to the thoroughness of [his] mental health evaluation of them." [Record No. 132-1 at 6] Not only that, but "the [j]ury would have been allowed the opportunity to personally view these witnesses to compare their mental histories to their testimony and the jury would find the criminal allegations against Dr. Adkins are wrong." [*Id.*] Adkins also argues that he has lost the opportunity to "request complete mental evaluations" from "other professionals to show his assessments were true and accurate by comparison." [*Id.*] Under *Rogers*, however, Adkins must show that the testimony from these witnesses is not otherwise available or capable of being obtained through other means. As the United

---

[1] Daugherty has not alleged, for example, that the SSA OIG intentionally delayed their investigation.

States and the Magistrate Judge point out, Adkins evaluated hundreds of claimants for Conn during the course and scope of the charged conspiracy[.]" [Record No. 177 at 10 (quoting Record No. 149 at 14-15)] Therefore, Adkins has hundreds of other potential witnesses through which he may establish the very thing he allegedly would have sought from the sixteen.

The second prong is whether the pre-indictment delay was intentionally caused by the government to gain a tactical advantage. *Brown*, 959 F.2d at 66. Neither defendant offers a compelling argument on this point. In fact, Daugherty attempts to shift the burden to the government. He cites an out-of-circuit, outlier case that requires the government to "come forward and provide reasons for its delay" once prejudice has been established. *United States v. Sowa*, 34 F.3d 447, 451 (7th Cir. 1994) ("once the defendant has proven actual and substantial prejudice, the government must come forward and provide its reasons for the delay"). This is not the law in this circuit. *United States v. Schaffer*, 586 F.3d 414, 426 (6th Cir. 2009) ("The applicable standard . . . requires [the defendant] to demonstrate that the Government had no valid reason for the delay."). *Sowa* is an outlier among circuits (*see* Record No. 177 at 8 n.5 (surveying cases)) and because Daugherty has failed to establish prejudice, *Sowa* has no work to do here.

For his part, Adkins does not actually argue that the government undertook a delay for the purpose of tactical advantage. He only seems to imply it, suggesting "the Government does not have a good reason for such a delay." [Record No. 132-1 at 7] According to Adkins, the government was aware of the physical condition of the potential witnesses but waited to bring the case: "only after these sixteen witnesses died [] did the Government decide to pass

the baton to the Eastern District of Kentucky and prosecute the Defendant." [*Id.*] As the Magistrate Judge characterizes it, this a naked assertion with no evidentiary support.

Because the defendants have failed to establish either prong of the standard for dismissal based upon pre-indictment delay, they are not entitled to the relief under this theory.

**II.     Immunity**

Defendant Adkins alleges that he was granted *informal* immunity in exchange for his testimony before the Federal Grand Jury in the Southern District of West Virginia on September 25, 2012. [Record Nos. 132 at 1, 132-1 at 2] Magistrate Judge Wier concluded that, assuming all of the factual allegations in Adkins's motion are true, he is not entitled to relief based on this assertion. [Record No. 178 at 5] The Court agrees.

Adkins claims that, on August 23, 2012, "Government agents, McGill and Morton, arrived at the Pikeville Medical Center to serve [him] with a subpoena to testify" in front of a Federal Grand Jury in the Southern District of West Virginia investigating Eric Conn and his law practice's submission of Social Security claims. [Record No. 132-1 at 2] Adkins states that, out of concern, he "made a comment to the agents, if he needed a lawyer." [*Id.*] The "agent(s) replied that [he] was not a target and he didn't need a lawyer." [*Id.*] Adkins argues that he "viewed the comments as a grant of immunity conveyed to him by agents acting on behalf of the Assistant U.S. Attorney" who issued the subpoena. [*Id.*] He suggests that he would not have conversed with the agents or testified had his "concern of criminal jeopardy" not been "alleviated by the grant of immunity." [*Id.*] Adkins further argues that his "detrimental reliance" on the agents' statement that he did not need a lawyer "was solidified into a contractual agreement that he would not be prosecuted, when he spoke to the agents and gave testimony to the Grand Jury." [Record No. 132-1 at 4]

This factual allegation fails to entitle Adkins to relief for two reasons. First, taking the allegations as true, together with excerpted the transcript from his Grand Jury testimony, it is clear that no contractual agreement for pocket immunity existed. Second, even assuming that Adkins was granted pocket immunity by the prosecutor in the Southern District of West Virginia, Adkins alleges no basis to find an exception to the rule that such agreements are binding only in the prosecutor's jurisdiction.

Promises of pocket immunity "are contractual in nature and do not bind other parties not privy to the original agreement." *United States v. Turner*, 936 F.2d 221, 223 (6th Cir. 1991). A defendant seeking to enforce a promise "must show both that the promisor had actual authority to make the particular promise and that he (the defendant) detrimentally relied upon it." *United States v. Flemini*, 225 F.3d 78, 84 (1st Cir. 2000). While Adkins alleges reliance, he has not established that a promise was actually made, or that the agents he spoke with had authority to make a promise. As the Magistrate Judge notes "[f]oundationally, no prosecutor (or law enforcement agent) assured Adkins 'that he will be immune from any prosecution' based on his grand jury testimony." [Record No. 178 at 5 (quoting *Turner*, 936 F.2d at 223)] Any doubt is eliminated by the transcript of the AUSA's statements to Adkins.

Adkins was told that his status of not being a target of the investigation "can change at any time," and that "being told that you're not a target today doesn't meant that you'll never be one." [Record No. 149-1 at 2] Adkins affirmatively acknowledged each statement. [*Id.*] The direct statement that Adkins could become a target of the investigation at a later time removes any mystery as to what Adkins was promised. Even if he initially understood the agent's statement that he "was not a target" as meaning he was being given immunity, the prosecutor's explanation at the outset of Adkins's Grand Jury testimony that "that word [target]

has a specific meaning within the Department of Justice" would have disabused him of that notion. [*Id.*] Adkins is a highly-educated individual and he does not allege that he was somehow tricked into testifying.

Even setting this clear evidence aside and assuming that there was an agreement of pocket immunity (Adkins does not allege being granted formal immunity), that immunity would not present a hurdle to this prosecution. As the Sixth Circuit made clear in *Turner*, promises of pocket immunity "do not bind other parties not privy to the original agreement." 936 F.2d at 223; *see also United States v. Peister*, 631 F.2d 658, 662-63 (10th Cir. 1980). In fact, federal statutory authority requires that grants of immunity that bind all federal prosecutors must be approved of a senior Justice Department official. 18 U.S.C. § 6003(b). Adkins's cited authority that informal agreements can be binding nationwide, *United States v. Carter*, 454 F.2d 426 (4th Cir. 1972) (en banc), dealt with a distinct factual scenario where the defendant was in fact promised *nationwide* immunity. Critically, Adkins alleges nothing more than being told he was not presently a target of the investigation.

On the facts alleged, Adkins can show no plausible theory that he is immune from prosecution in the Eastern District of Kentucky. Moreover, because the question of immunity is "a pure question of law" for the Court, *Flemmi*, 225 F.3d at 84, Adkins is not entitled to present an immunity defense at trial.

### III. Failure to State an Offense

Finally, and perhaps most creatively, Adkins seeks dismissal of the Indictment under Federal Rule of Criminal Procedure 12(b)(3)(B)(v), failure to state an offense, on the theory that because psychological diagnoses are inherently subjective, they are "not subject to the fraudulent or misrepresentation standards to be examined in a criminal court." [Record No.

139 at 2] On the contrary, the United States asserts "the expression of an opinion not honestly entertained may constitute [a] false or fraudulent statement[]." [Record No. 155 at 23]

But to indulge this novel theory is to miss the point. The fatal flaw in Adkins's motion is otherwise apparent—the motion does not actually attack the Indictment for failure to state an offense. Rather, it substantively contains "an answer to the allegations of the [I]ndictment." [*Id.* at 14] Motions to dismiss under Rule 12(b)(3)(B)(v) are meant for purely legal questions. *United States v. Ali*, 557 F.3d 715, 719 (6th Cir. 2009) ("A motion under Rule 12 is therefore appropriate when it raises questions of law rather than fact."). Because there exists no infirmity in the Indictment under the proper Rule 12 standard, Magistrate Judge Wier's Recommended Disposition [Record No. 181] will be adopted, and Adkins's Motion to Dismiss [Record No. 139] will be denied.

As the Magistrate Judge thoroughly outlines, the Indictment as to Adkins sufficiently states offenses. It "plainly contains the elements of the offenses charged[,] fairly informs [Adkins] of the charges against which he must defend[,] and enables him to plead an acquittal or conviction in bar of future prosecutions for the same offenses." [Record No. 181 at 3 (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)) (internal marks omitted)] The counts of the Indictment pertaining to Adkins "clearly track[] the language of the statute and thus contain[] the elements of the [offenses charged]." *United States v. Anderson*, 605 F.3d 404, 411 (6th Cir. 2010). Moreover, it include[s] the relevant time period and the specific event that triggered the charge against [him]." *Id.*

Adkins's discussion of his process for evaluating claimants, his knowledge (or lack thereof) of the Social Security disability application process, and his suggestion that his

opinions may not be impeached because they are merely opinions, are factual arguments reserved for the jury.[2]

## IV. Conclusion

Although this Court must make a *de novo* determination of those portions of the Magistrate Judge's recommendations to which timely objections are made, 28 U.S.C. § 636(b)(1)(C), "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings." *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Here, Daugherty and Adkins have failed to object to any portion of the Magistrate Judge's Recommended Dispositions. Nevertheless, the Court has reviewed the record *de novo* and agrees with each conclusion reached by Magistrate Judge Wier.

Daugherty and Adkins have failed to established prejudice from the timing of the Indictment, and have not shown that any delay was undertaken for tactical reasons by the United States. Adkins's argument that he was granted pocket immunity in the Southern District of West Virginia, and his belief that that agreement bars prosecution in the Eastern District of Kentucky, is utterly unconvincing. Finally, Adkins has not made a colorable argument that the Indictment fails to state a claim. Being sufficiently advised, it is hereby

**ORDERED** as follows:

---

[2] Adkins argues that "[s]ince subjective conclusions in the field of psychological assessments are not provably true or false . . . the jury should not be burdened with the impossible task of reading minds." [Record No. 139-1 at 6] This assertion, that the jury cannot be tasked with evaluating the propriety of his professional opinions, is undercut by Adkins's own argument, by separate motion, that he must have the opportunity to "request complete mental evaluations" of the claimants from "other professionals to show his assessments were true and accurate by comparison." [Record No. 132-1 at 6]

1. United States Magistrate Judge Robert E. Wier's Recommended Dispositions [Record Nos. 177, 178, 181], are **ADOPTED** and **INCORPORATED** by reference.

2. Defendant David Black Daugherty's Motion to Dismiss [Record No. 143] is **DENIED**.

3. Defendant Alfred Bradley Adkins's Motions to Dismiss [Record Nos. 132 and 139] are **DENIED**.

This 3rd day of May, 2017.

Signed By:
*Danny C. Reeves* DCR
United States District Judge